# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

Petitioner,
**PEREZ FLORES, MARCO L.**

v.

**PAMELA BONDI,**
in his official capacity as
Attorney General of U.S.;

**ALEJANDRO MAYORKAS,**
in his official capacity as
Secretary of the U.S. DHS;

**THOMAS BROPHY,**
in his official capacity as Acting
Field Office Director of Buffalo
Field, Enforcement and
Removal Operations, U.S.;

an

**GEORGE HARVEY**
in his official capacity as
Officer-in-Charge,
Buffalo Federal
Detention Facility.

*Respondent.*

**DETAINED**
A#: 201-517-999
DOCKET#: 25-195

25 CV 306-V



# IN A PETITION FOR WRIT OF HABEAS CORPUS
# PURSUANT TO 28 U.S.C. § 2241

# INTRODUCTION

My name is Marco L Perez Flores, Pro-se As ("Petitioner") Mr. Perez Flores, petitions this court for a writ of habeas corpus to remedy Petitioner's indifinite detention by Respondents. Petitioner submits this Memorandum of law in Support of the Petition for a writ of habeas Corpus.

As the Supreme Court Held in <u>Zadvydas v. Davis, 533 U.S. 678 (2001),</u> noncitizens cannot be detained indefinitely if the government is unable to carry out their removal. Instead, detention after a final order of removal is authorized only when removal is reasonably foreseeable. As a guide to courts, the court in Zadvydas established a presumption that detention after a final order of removal was permissible for six (6) months have not passed, particularly if it is clear that the United States will not be able to effect a noncitizen's removal. But after that six-month period, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." And the longer a noncitizen has been detained, the stronger the government's showing must be.

Mr. Perez Flores, declares his prolong restraint without a bond hearing is illegal and against the constitution of this Country.
Petitioner is entitled to release under the framework of Zadvydas unless the government promptly demonstrates that there is a significant likelihood of removal in the reasonably foreseeable future.

Petition for a Writ of Habeas Corpus, Post Order Custody Review a written request to be release on the order of supervision.

The Due Process Clause applies to all persons in the United States whether their presence here is lawful, unlawful, temporary, or permanent. "Zadvydas, 533 U.S. at 693; see also Plyler v. Doe, 457 U.S. 202, 210 (1982)(Noncitizens), even (noncitizens) whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.")

We the people of th e United States, in order to form a more, perfect union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and prosperity, do ordain and establish this constitution for the estates of America.

Since I have entered the United States, on October 15, 2001, Approximately, without inspection at Laredo Texas. I have been accorded the following immigration status: unlawful

I am currently being detained by the Department of Homeland Security ("DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. I have been in immigration detention since January 25th, 2024, approximately (15) months.

I was served with a Notice to Appear ("NTA") on January 25th, 2024 charging me with removability based on my conviction(s) for Present without admission or parole. *INA§ 212(a)(6)(A)(i).* 2.) Convicted of a crime involving moral turpitude. *INA § 212 (a)(2)(A)(i)*

As such, I have been subject to mandatory immigration detention for approximately (15) months while my removal proceedings are pending.

Without intervention from this Court, my detention will continue, as my immigration case is ongoing.

When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months.

DHS has not yet conducted a bond hearing to determine whether my continued detention is justified.

My immigration detention is unreasonably prolonged because I have been detained for more than (15) months without a bond hearing, and my detention will continue without a bond hearing unless this Court grants me relief.

Once it is established that immigration detention is unreasonably prolonged, the burden shifts to the government to prove by clear and convincing evidence that my continued detention is warranted either because I am dangerous or because I pose a flight risk.

Accordingly, I respectfully request that this Court issue a writ of habeas corpus and order the Respondent to release me from their custody because the Respondent cannot establish by clear and convincing evidence that my continued detention is warranted, and continuing to detain me violates my constitutional due process rights under the Fifth Amendment. In the alternative, I respectfully request this Court order a bond hearing where the Respondent bears the burden to prove by clear and convincing evidence that my continued detention is necessary to prevent flight or danger to the community.

## PARTIES

Petitioner, Marco Leonel Perez Flores, is detained at Buffalo Federal Detention Facility.

Respondent George Harvey, is sued in his official capacity as the Officer-in-Charge of the Buffalo Federal Detention Facility, at which Petitioner is currently detained.

## JURISDICTION AND VENUE

Jurisdiction is proper under the U.S. Constitution, U.S. CONST. art. I § 9, cl. 2 ("Suspension Clause"), and federal statutes 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2241 (habeas corpus); and 28 U.S.C. § 1651 (All Writs Act).

Additionally, this Court has jurisdiction to grant injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging their detention by DHS, see Demore v. Kim, 538 U.S. 510, 516-17 (2003); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

Furthermore, while 8 U.S.C. § 1226(e) bars judicial review of the discretionary denial of bond, it does not bar constitutional challenges to the bond hearing process. See, e.g., Medley v. Decker, No. 18-CV-7361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019) (federal district courts have habeas jurisdiction to hear challenges to constitutional adequacy of bond hearing procedures); see also Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the [bond] process itself was constitutionally flawed are 'cognizable in federal court on habeas . . . .'") (quoting Gutierrez–Chavez v. INS, 298 F.3d 824, 829 (9th Cir.2002)).

Venue is proper in the U.S. District Court for the Western District of New York under 28 U.S.C. § 1391 because the Defendant is in this District; I am currently being detained within this District at the Buffalo Federal Detention Facility in Batavia, New York; and a substantial part of the events giving rise to the claims in this action took place in this District.

## STATUTORY FRAMEWORK

Congress has authorized DHS to mandatory detain noncitizens who are convicted of

certain crimes without the opportunity for a bond hearing. 28 U.S.C. § 1226(c).

The statute itself is silent on whether DHS is authorized to detain such noncitizens subject to mandatory detention for the entirety of their removal proceedings, regardless of how long such proceedings may take. See id.

When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months. Matos v. Barr, 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020).

## EXHAUSTION OF REMEDIES

There is no statutory exhaustion requirement for a petition challenging immigration detention. See Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014).

I am not required to exhaust administrative avenues to challenge my detention because the statutory authority subjects me to mandatory detention and, as such, does not provide me with any meaningful administrative options with which to challenge my detention. See 8 U.S.C. § 1226(c); see also Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 249 (2d Cir. 2008) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.") (citing Honig v. Doe, 484 U.S. 305, 327 (1988)).

## LEGAL ARGUMENT

**Procedural Due Process Requires that I Be Released or, at Minimum, Afforded a Constitutionally Adequate Bond Hearing at Which the Government Must Justify My Continued Detention**

The United States Court of Appeals for the Second Circuit in the case of Black v. Dir. Thomas Decker, 103 F. 4th 133 (2nd Cir. 2024) and companion case Keisy G.M v. Decker "Black/GM. The Second Circuit decided that the three-factor test from a case called Mathews v. Eldridge, 424 U.S. 319 (1976), test guides determination of whether immigration detention remains constitutionally sound. see 103 F. 4th 133, 150-51."Zadvydas, 533 U.S. at 693; see also Plyler v. Doe, 457 U.S. 202, 210 (1982)(Noncitizens), even (noncitizens) whose presence in this

country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.")

Congress authorized the DHS to detain noncitizens during a statutorily defined "removalperiod," during which the department may effectuate the noncitizen's removal from the United States. 8 U.S.C. § 1231 (a)(1). The removal period typically lasts for ninety days and starts the latest of : (1) the date an order of removal becomes administratively final; (2) if a removal order is judicially reviewed and a stay of removal has been ordered, the date of the court's final order; or (30 the date the noncitizen is released from any detention other than for immigration purposes. 8 U.S.C. § 1231(a)(1)(B).21. under 8 U.S.C. § 1231(a)(2), noncitizens subject to final orders of removal "shall" be detained during the first ninety days-the "removal period"-and they "shall" be removed during that period under §1231(a)(1). under 8 U.S.C. § 1231(a)(6), however, the government "may" continue detention beyond the 90-days removal period if a noncitizen falls within certain broad categories of removability or is determined "to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

The Supreme Court in Zadvydas, in order to avoid the serious due process concerns that would be presented by permitting detention for an indefinite period of time, construed 8 U.S.C. § 1231(a)(6) to authorize detention only where it is significantly likely that removal will occur in the reasonably foreseeable future. Zadvydas, 533 U.S. at 690. After a noncitizen meets his or her initial burden to show that no such likelihood of removal exists, the burden shifts to the government to "respond with evidence fufficient to rebut [the noncitizen's] showing."Id. at 701.1

First the Court explained that the interest 1226(c)-detained noncitizen hold "'is the most significant liberty interest there is- the interest in being free from imprisonment. Black, 103 F.4th at 151 (quoting Velasco Lopez v. Decker, 978 F.3d 842, 851 (2nd Cir. 2020). the Court noted that noncitizen detained under 8 U.S.C. § 1226(c) possess the same liberty interest as noncitizens detained under any other statute. see id. it highlighted that 1226(c)-detained noncitizen lack any administrative mechanisms by which they could challenge their detention. see id. here because Mr. Perez Flores has been detained in civil immigration detention since on or about January 25, 2024, Mr. Perez Flores, too possesss the same liberty as <u>Black and GM.</u>

Second the Black Court found that there is a high risk of erroneous deprivation of rights for 1226(c)-detained noncitizens because there are "almost nonexistent procedural protections in the place for section 1226(c) detainees [.]" Id. at 152. the court observed that while 1226(c)-

detained noncitizens posses due process protections in order adjacent domains-such as the ability to ask for matter of Joseph hearing, which resolve whether they may be subjected to mandatorydetention-those mechanisms are insufficient in covering over the deficient processes noncitizen possess for requesting their actual release.See id. The court thus concluded that 1226(c)-detained noncitizens are faced with even higher "risk[s] of erroneous deprivation" of their private liberty intrests than 1226(a)-detained noncitizens. see id. Here, Mr. Perez Flores, has not recieved any mechanism that would ensure an impartial adjudication of his continued detention. Rather, the only review of Mr. Perez Flores, of continued detention has been by ICE. Therefore, Mr. Perez Flores, risk of erroneous deprivation is thus markedly high.

    Third and lastly, the Second Circuit determined that the competing government intrest in preventing a 1226(c)-detained noncitizen from recieving a bond hearing is minimal. The court outlined that the government possesses two primary interests in denying mandatorily-detained noncitizens from receiving a bond hearing at this stage: ensuring the noncitizen's appearance at proceedings and protecting the community from danger. see id. at 153-54. The court, however, indicated these interests are not undercut by the relief Mathews provides in a procedural sense. It assessed "at any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen detainees." Id. Since the procedural protection that flows out of the first two Mathews factors does not overburden the government's interest at the third factor, the court found relief reasonable and necessary.

    The Supreme Court in Zadvydas, in order to avoid the serious due process concetns that would be presented by permitting detention for an indefinite period of time, construed 8 U.S.C. § 1231(a)(6) to authorize detention only where it is significantly likely that removal will occur in the reasonably foreseeable future, Zadvydas, 533 U.S. at 690. After a noncitizen meets his or her initial bueden to show that no such likelihood of removal exists, the burden shifts to the government to "respond with evidence sufficient to rebut [the noncitizen's] showing." Id. at 701. 127. if a court finds removal is reasonably foreseeable, the court may still order release, and may consider the risk posed by the individual to community safety in determining whether to do so. Id. at 700. While dangerousness may justify immigrant detention in certain casas, the court "uph[o]ld[s] preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to string procedural protections."Id. at 691. To the extent respondent claims otherwise, the Supreme Court's decisin in Johnson v. Arteaga-Martinez has no application here. 142 S. Ct. 1827 (2022). Arteaga-Martinez merely held that, as amatter of statutory construction, 8 U.S.C. § 1231(a)(6) does not require bond hearing after six months of detention. Id. at 1833. Arteaga-Martinez does not reach the question of what due process

requires under the Constitution, nor does it undermine the presumption affirmed in Zadvydas that post-oeder detention becomes unreasonable after six months. Id. at 1834-35.

The U.S. Supreme Court's opinion in Zadvydas v. Davis stands for the proposition that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person...of... liberty... without due process of law." U.S. CONST. amend. V. Prolonged detention requires due process protections for individuals, even those whose "presence in this country is unlawful." Plyler v. Doe, 457 U.S. 202, 210 (1982). Thus, as the Court noted, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." Zadvydas, 533 at 690.

By subjecting noncitizens like myself to mandatory immigration detention, 8 U.S.C. § 1226(c) permits indefinite detention, thus raising the very serious constitutional problem that the Court had cautioned against in Zadvydas.

Although the Supreme Court ruled in Demore that mandatory detention pending removal proceedings is not unconstitutional per se, the Court left open the question of whether the duration of such mandatory detention is subject to constitutional constraints. Such constitutional constraints can be found in the Fifth Amendment of the U.S. Constitution, which, as the Court recognized in Demore, "entitles [noncitizens] to due process of law in deportation proceedings." 538 U.S. at 523 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)).

While the Supreme Court held in Jennings v. Rodriguez, 583 U.S. \_\_\_\_, 138 S. Ct. 830 (2018), that § 1226(c) does not require bond hearings in prolonged detention cases as a matter of statutory construction, it did not express any views on whether the U.S. Constitution itself requires a bond hearing, leaving it to the lower courts to address the issue of what process is due when detention is unreasonably prolonged.

## My Detention Has Become Unreasonably Prolonged

In the wake of Jennings, the Western District of New York ("WDNY") has developed a two-step inquiry for evaluating procedural due process challenges to prolonged immigration detention. Hemans v. Searls, No. 18-CV-1154, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019).

In the first step of the inquiry, the Court considers whether the detention has been unreasonably prolonged by weighing several distinct factors. Id. If the Court finds that the detention was unreasonably prolonged, it proceeds to step two of the inquiry, which involves identifying what process is due by considering the factors outlined in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Hemans, 2019 WL 955353, at *5., see also Hechavarria v. Sessions, No. 15-CV-1058 (LJV), 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018). If the government has failed to provide the detained person with the procedural safeguards dictated by the Mathews factors, then the detained person's continued detention violates procedural due process. Hechavarria, 2018 WL 5776421 at *8-9.

To determine whether one's immigration detention is unreasonably prolonged, courts in this district have adopted the following multi-factor test articulated in Cabral v. Decker:

> [T]he length of time the petitioner has been detained;
> (2) theparty responsible for the delay;
> (3) whether the petitioner hasasserted defenses to removal;
> (4) whether the detention willexceed the time the petitioner spent in prison for the crime that made him removable;
> (5) whether the detention facility is meaningfully different from a penal institution for criminal detention;
> (6) the nature of the crimes committed by the petitioner; and
> (7) whether the petitioner's detention is near conclusion. 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018).

The first factor, the length of immigration detention, is the most important factor. Ranchinskiy v. Barr, 422 F. Supp. 3d 789, 797 (W.D.N.Y. 2019) (quoting Bermudez Paiz v. Decker, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018)).

Courts in the Second Circuit have "generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," Ranchinskiy, 422 F. Supp. 3d at 797 (quoting Lett v. Decker, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018)).

Moreover,in Demore, the Supreme Court heavily relied on the average length of detention for people detained under §1226 as support for its constitutionality, reasoning that a six-week detention was the average and that a five-month detention counts as an outlier. 538 U.S.at 530.

I have been detained since January 25th, 2024 and have been detained for over (15) months. Since the length of my detention exceeds six months, the first factor weighs in my favor when determining whether my detention has become unreasonably prolonged.

The second factor considered is the question of which party is responsible for the detention being unreasonably prolonged. Cabral, 331 F. Supp. 3d at 261.

While a detained person who is found to be "abusing the processes provided to him" would bear the responsibility of their detention being prolonged, a detained person who "simply made use of the statutorily permitted appeals process" cannot be made responsible for his prolonged detention. Hechavarria v. Sessions, 891 F. 3d 49, 56 n.6 (W.D.N.Y. 2018); see also Hechavarria, 2018 WL 5776421 at *7.

An immigration judge ordered me deported on July 18th, 2024. After being denied relief, I appealed my case to the Board of Immigration Appeals ("BIA") on August 02,2024 approximately .

Factor two weighs in my favor as I have made use of the "statutorily permitted appeals process". Idem.

Factor three weighs in my favor since I have asserted the following defense(s) to my removal:Deferral of removal under the Convention Against Torture ("CAT"); withholding of removal

Factor four weighs in my favor because the length of my immigration detention (15) months, exceeds months, because **On April 18th, 2024, Mr. Perez, submitted a Motion for an Extention of Time to File a late Direct Appeal under _N.Y.C.P.L.§ 460.30_  to the Motion Clerk, Appellate Division Second Judicial Department, Supreme Court of The State Of New York. at 45 Monroe Place, Brooklyn N.Y.  On July 15th, 2024 my Motion was accepted, (Docket No. 2024-03190) my criminal case is re-open at this time and  should not be consider for Immigration purposes. because my criminal conviction is not final. My convicted was Sexual abuse in the 1st degree: forcible compulsion, a violation of N.Y.P.L.section 130.65(1).  I was sentenced to 2 years incarceration and 10 years 0f post-realese supervision.**

Factor five weighs in my favor because my detention at the BFDF is not meaningfully different from detention at a penal institution because it comprises many of the same restrictions that often accompany penal detention, including restrictions on movement and expectations to follow orders of presiding facility officers. See Ranchinskiy, 422 F. Supp. 3d at

799 (finding, absent rebuttal from the government, that detention at the BFDF is akin to criminal incarceration); Gonzales Garcia v. Barr, No. 6:19-CV-6327-EAW, 2020 WL 525377, at * 15 (W.D.N.Y. Feb. 3, 2020) enforcement denied on other grounds sub nom. Gonzales Garcia v. Rosen, 513 F. Supp. 3d 329 (W.D.N.Y. 2021) ("[T]he reality is that the [BFDF] houses [noncitizens] against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison . . . the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention.").

Factor seven weighs in my favor because my case is ongoing.

Since a majority of the factors in the multi-factor test weigh in my favor, particularly factor one pertaining to the excessive length of my detention, there is sufficient evidence to conclude that my detention is unreasonably prolonged.

Once the Court has found that detention is unreasonably prolonged, it moves to the second step of the two-step inquiry, which asks what specific due process rights should be afforded. Hechavarria, 2018 WL 5776421 at *7-9.

## Because My Detention Has Been Unreasonably Prolonged and I Am Being Deprived of a Liberty Interest, Due Process Demands My Release or, at Minimum, That I Receive a Constitutionally Adequate Bond Hearing

Due process demands "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

In Mathews v. Eldridge, the Supreme Court provided a three-factor test to weigh the constitutionality of administrative procedures: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). Each of the Mathews factors weighs heavily in favor of release or, at minimum, requiring a constitutionally adequate bond hearing once detention under 8 U.S.C. § 1226(c) has become prolonged.

First, the importance and fundamental nature of an individual's liberty interest is well established. See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of [] liberty . . . ."); cf. Hechavarria, 2018 WL 5776421 at *8 ("[T]his Court finds little difference between Hechavarria's detention and other instances where the government seeks the civil detention of an individual to effectuate a regulatory purpose.").

Here, the fundamental nature of freedom weighs in favor of my release. I completed my criminal sentence on January 25th, 2024 and I have been detained by Respondent for over (15) months without any meaningful judicial review.

Second, the risk that my freedom will be erroneously deprived is significant. Crucially, I have no opportunity to challenge my detention because the statute mandates detention regardless of whether I am a flight risk or danger to the community. See Jennings, 138 S. Ct. at 844 (discussing the use of "may [detain]" and "shall [detain]" in the context of 8 U.S.C. § 1226 and the requirement of detention when the statute uses "shall.").

Furthermore, any internal process at DHS to determine whether release is warranted is not subject to review or challenge. Thus, there is a significant risk of erroneous, unwarranted detention, and the deprivation of my liberty interests. See e.g., Hechavarria, 2018 WL 5776421, at *8 ("[G]iven that the statute precludes any pre-or post-deprivation procedure to challenge the government's assumption that an immigrant is a danger to the community or a flight risk, it presents a significant risk of erroneously depriving [Petitioner] of life and liberty interests."); see also Chi Thon Ngo, 192 F.3d 390, 398-99 (3d Cir. 1999) ("To presume dangerousness to the community and risk of flight based solely on his past record does not satisfy due process. . . . [P]resenting danger to the community at one point by committing crime does not place [a petitioner] forever beyond redemption.").

Finally, the procedure I propose—namely, requiring that the DHS prove to this court or, in the alternative, an immigration judge, that my continued detention is justified—does not meaningfully prejudice the government's interest in detaining dangerous noncitizens during removal proceedings. Instead, it serves just that purpose. See e.g., Hechavarria, 2018 WL 5776421 at *8 ("The government . . . contends that it has a regulatory interest in [petitioner's] detention pending removal based on his serious criminal history and risk of flight. This Court agrees that both of these interests may well be 'legitimate and compelling.' But those are the very interests that would be addressed at a detention hearing. So the government's continued assertion that [the petitioner] must be detained because he is dangerous simply begs the question and suggests exactly why a hearing is necessary.") (internal citations omitted).

As the Second Circuit articulated in Velasco Lopez v. Decker, once detention has become prolonged, it is in everyone's—the petitioner, the Government, and the public's—interest for the petitioner to receive a constitutionally adequate custody redetermination hearing. See 978 F.3d 842, 857 (2d Cir. 2020) ("The irony in this case is that, in the end, all interested parties prevailed. The Government has prevailed because it has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community. [The petitioner] has prevailed because he is no longer incarcerated. And the public's interest in seeing that individuals who need not be jailed are not incarcerated has been vindicated.").

In the immigration context, the only two valid justifications for detention are to mitigate the risks of danger to the community and to prevent flight. See Demore, 538 U.S. at 531 (Kennedy, J., concurring) ("[T]he justification for 8 U.S.C. § 1226(c) is based upon the government's concerns over the risk of flight and danger to the community").

Given the gravity of the liberty deprivation when the government detains individuals, due process requires that the government bear the burden of proof by clear and convincing evidence for detaining an individual, particularly after that detention has become prolonged. Cf. Velasco Lopez v. Decker, 978 F.3d 842, 856 (2d Cir. 2020). (stating, for an 8 U.S.C. § 1226(a) prolonged detention claim, "it is in improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty. Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection.").

Consistent with these principles, the WDNY has found that, where a particular detained person's mandatory detention becomes unreasonably prolonged, due process requires the government to show, by clear and convincing evidence, that continued detention is necessary because that detained person is a flight risk or is dangerous. Jules v. Garland, No. 21-CV-6342 CJS, 2021 WL 4973081, at *7 (W.D.N.Y. Oct. 26, 2021); see also Campbell v. Barr, 387 F. Supp. 3d 286, 300 (W.D.N.Y. 2019) ("To sustain the prolonged detention of [a noncitizen] subject to removal proceedings based on its general interests in immigration detention, the government is required, in a full-blown adversary hearing, to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person, or ensure that the [noncitizen] will appear for any future proceeding. This requires consideration of less restrictive alternatives to detention.") (internal citations and quotation marks omitted); Ranchinskiy, 422 F. Supp. 3d at 800 ("[B]oth due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond.").

## CLAIM FOR RELIEF COUNT ONE:

## MY ONGOING DETENTION VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

I reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

Detained people who have been mandatorily detained in immigration detention for an unreasonably prolonged period must be released absent clear and convincing evidence that the detained person is dangerous or a flight risk, and that no conditions of release can reasonably mitigate that danger or flight risk.

For these reasons, my continued detention without, at minimum, a constitutionally adequate hearing violates due process.

Respectfully submitted,

/s/, _____

Marco L. Perez Flores. Pro-se As Petitioner
A#: 201-517-999...docket No. 25-195
Buffalo Federal Detention Facility
4250 Federal Drive, Batavia, N.Y. 14020.

Date: 4/01/25

## PRAYER FOR RELIEF

**WHEREFORE**, I respectfully pray that this Court:

1. Assume jurisdiction over this matter;

2. Grant a Writ of Habeas Corpus directing the Respondent to release me from further unlawful detention;

3. Enter preliminary and permanent injunctive relief enjoining Respondent from unlawfully detaining me any further;

4. In the alternative, issue a conditional writ of habeas corpus requiring Respondent to provide me with an individualized bond hearing before a neutral arbiter at which Respondent must bear the burden of establishing by clear and convincing evidence that my continued detention is justified;

5. Order that in considering my detention, the Court should require respondents must consider alternatives to detention and my ability to pay when setting a monetary bond;

6. Grant such further relief as the Court deems just and proper.

I affirm, under penalty of perjury, that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.

Respectfully submitted,

/s/, _____

Marco L. Perez Flores. Pro-se As Petitioner
A#: 201-517-999....docket No: 25-195
Buffalo Federal Detention Facility
4250 Federal Drive, Batavia, N.Y. 14020.

## CERTIFICATE OF SERVICE

I, _Marco L. Perez Flores_ hereby certify that on April _1st_, 2025, I caused to be served a true copy of the:

## IN A PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

_X_ By sendig via first class mail to:

Western District of New York (WDNY)
U.S. Courthouse
2 Niagara Square
Buffalo, New York 14202

DHS Chief Counsel Office Batavia
4250 Federal Drive,
Batavia NY 14020

I certify under the penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C.§ 1746.

Respecfully Submitted,

/s/, _[signature]_

Marco L. Perez Flores. Pro-se As Petitioner
A#: 201-517-999....docket No: 25-195
Buffalo Federal Detention Facility
4250 Federal Drive, Batavia, N.Y. 14020.

04/01/2025

[Notary seal: KAYCEE ERNST, STATE OF NEW YORK, NOTARY PUBLIC, Qualified in Genesee County, 01EV6413806, MY COMMISSION EXPIRES 02/01/2029]

16 of 16