UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARCO L. PEREZ FLORES,

               Petitioner,

      v.

PAMELA BONDI et al.,

               Respondents.

_____

                        25-CV-306-LJV
                        DECISION & ORDER

     The petitioner, Marco L. Perez Flores, has been detained in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") for approximately 17 months.  Docket Item 1.  On April 7, 2025, Perez Flores filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.  Docket Item 1.  The government responded, Docket Item 15, and Perez Flores replied, Docket Item 17.

     For the reasons that follow, this Court grants Perez Flores's petition in part.

## BACKGROUND[1]

     Perez Flores is a citizen and native of Honduras.  *See* Docket Item 15 at ¶ 3; Docket Item 15-2 at 17.  In October 2001, he entered the United States illegally and apparently has lived in this country ever since.  *See id.* at 2; Docket Item 15-2 at 17.

_____

     [1] The following facts are taken from Perez Flores's petition, Docket Item 1, and the government's response and its attached exhibits, Docket Items 15, 15-1, 15-2, 15-3, 15-4, 15-5, and 15-6, and are essentially undisputed.  The Court also takes judicial

In October 2023, Perez Flores was convicted of sexual abuse in the first degree in violation of New York Penal Law § 130.65(1) and sentenced to 2 years of incarceration and 10 years of post-release supervision.[2]  *See* Docket Item 1 at 10; Docket Item 15-2 at 77.  In December 2023, "ICE instituted . . . removal proceedings against Perez Flores."  Docket Item 15-1 at ¶ 14; *see* Docket Item 15-2 at 5-8 (copy of notice to appear issued by ICE to Perez Flores).  More specifically, ICE issued Perez Flores a notice to appear charging that he was removable under subsections 212(a)(6)(A)(i) and 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA") because he was present in the United States without legal status and because he committed a crime of moral turpitude.  *See* Docket Item 15-2 at 8; Docket Item 1 at 3.

On January 25, 2024, Perez Flores completed his sentence of incarceration and was "taken into ICE custody."  Docket Item 15-1 at ¶ 15; *see* Docket Item 1 at 10.  He was then "issued a Notice of Custody Determination" stating "that he would be detained pending a final administrative determination in his immigration proceedings."  *See* Docket Item 15-1 at ¶ 15.  On July 18, 2024, an immigration judge ordered Perez Flores removed from the United States, denying his various applications for immigration relief.[3]

_____

notice of Perez Flores's immigration proceedings.  *See Pina Morocho v. Mayorkas*, 2023 WL 1995283, at *3-4 (S.D.N.Y. Jan. 25, 2023) (taking judicial notice of petitioner's immigration proceedings in considering petition).  Throughout this decision and order, page numbers in docket citations refer to ECF pagination.

[2] The government says that in addition to that 2023 conviction, Perez Flores has been convicted of driving under the influence and disorderly conduct in 2004 and 2013, respectively, and that he was arrested for assault and family neglect in 2015.  Docket Item 15-1 at ¶¶ 8-10.  Perez Flores does not refer to any such arrests or convictions in his petition.  *See* Docket Item 1.

[3] Perez Flores also requested a custody redetermination.  *See* Docket Item 15-2 at 63-64.  But the immigration judge denied this request, finding that ICE was required to detain Perez Flores under 8 U.S.C. § 1182(a)(2) and 8 U.S.C. § 1226(c)(1) because

Docket Item 15-1 at ¶¶ 15-17; *see* Docket Item 15-2 at 17-53; Docket Item 1 at 10. Perez Flores appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on December 30, 2024.[4]  Docket Item 15-1 at ¶ 24; *see* Docket Item 15-2 at 74-78 (copy of BIA's decision); Docket Item 1 at 10.

On January 25, 2025, Perez Flores filed a petition for review in the United States Court of Appeals for the Second Circuit and moved for that court to stay his removal pending its decision.  *See* Docket Item 15-1 at ¶¶ 25-26; *see also Perez Flores v. Bondi*, Case No. 25-195, Docket Item 2 (2d Cir. Jan. 27, 2025) (petition for review); *id.*, Docket Item 8 (2d Cir. Jan. 27, 2025) (motion for stay).  The government opposed the motion, which remains pending before the Second Circuit.  *See* Docket Item 15-1 at ¶¶ 27-28; *Perez Flores*, Case No. 25-195, Docket Item 22 (2d Cir. Feb. 20, 2025); *id.*, Docket Item 30 (2d. Cir. May 19, 2025) (notice in response to Perez Flores's inquiry confirming that motion for stay of removal remains pending).

As Perez Flores's immigration case wore on, he remained detained at BFDF, where he has been held since he completed his criminal sentence.  *See* Docket Item 1

---

he had committed a crime referred to in those sections.  *See* Docket Item 15-2 at 63-64; Docket Item 15-1 at ¶¶ 20-21.

[4] As Perez Flores's immigration case proceeded, he also sought to reopen his criminal case.  In April 2024, he moved for an extension of time to appeal his conviction, and the New York State Supreme Court, Appellate Division, Second Department, granted that motion three months later.  Docket Item 1 at 10; *see* Docket Item 15-2 at 77.  As far as this Court is aware, the Second Department has yet to rule on Perez Flores's appeal.  And because his case was reopened, the BIA found that Perez Flores's criminal conviction was "not final for immigration purposes" and that he thus was "not removable as charged under section 212(a)(2)(A)(i)(I) of the INA."  Docket Item 15-2 at 77.  The BIA nonetheless affirmed the immigration judge's determination that Perez Flores was "removable under section 212(a)(6)(A)(i)" for being present in the United States without having been admitted or paroled.  *Id.*

3

at 3.  On January 30 of this year, ICE informed Perez Flores that it "would be performing a file custody review" in March.  Docket Item 15-1 at ¶ 29.  On March 12, 2025, ICE "issued a Decision to Continue Detention, advising Perez Flores that his detention would be continued because he m[ight] pose a danger to the community and pose a significant risk of flight."  *Id.* at ¶ 30; Docket Item 15-2 at 80-82.  ICE made this decision "based on a review of [Perez Flores's] file and consideration of any information [he had] provided to ICE officials."  Docket Item 15-2 at 80.  But in the time he has been held—which is now almost a year and a half—he has never been afforded a bond hearing. Docket Item 1 at 3; *see also* Docket Item 15-1 at ¶¶ 15, 21, 23, 29-30.

Shortly after ICE's March 2025 decision, Perez Flores filed this petition alleging that his "ongoing detention violates the Due Process Clause of the Fifth Amendment." Docket Item 1 at 14 (bold and some capitalization omitted).  The parties then briefed the petition as described above.  *See* Docket Items 15 and 17.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Perez Flores alleges that his continued detention violates his right to procedural due process under the Constitution and therefore asks this Court to order his immediate release (and enjoin the government "from unlawfully detaining [him] any further").  Docket Item 1 at 14-15.  "In the alternative," Perez Flores asks this Court to order the government "to provide [him] with an individualized bond hearing before a

4

neutral arbiter at which [the government] must bear the burden of establishing by clear and convincing evidence that [his] continued detention is justified." *Id.* at 15.

The government argues that this Court should find that Perez Flores is detained under 8 U.S.C. § 1231 and, accordingly, that his petition should be denied under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Docket Item 15-7 at 10-18; *see Zadvydas*, 533 U.S. at 695 (holding that it is "presumptively reasonable" for the government to detain noncitizens under section 1231 for a six-month period). But the government concedes that if this Court finds that Perez Flores is detained under 8 U.S.C. § 1226 rather than section 1231, the Second Circuit's decision in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), controls and "would likely lead this Court to order that [Perez Flores] receive a bond hearing." Docket Item 15-7 at 18-20.

This Court therefore begins by examining the statutory basis for Perez Flores's detention.

## I.    STATUTORY BASIS FOR DETENTION

The government's position here is rooted in its interpretation of the language of section 1231 and the impact of the government's forbearance policy with the Second Circuit. *See* Docket Item 15-7 at 6. The government says that "[a]lthough [it] has previously chosen in some cases not to raise its longstanding disagreement with this Court regarding the [forbearance policy], the time has come for the government to again try to sway the Court to its point of view." *Id.* (citation and internal quotation marks omitted). This Court remains unpersuaded.

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018), *as*

5

*amended* (May 22, 2018). Section 1231(a), on the other hand, applies to those noncitizens who have been determined to be removable. *Id.* at 54-55. That section provides for a "removal period," which it defines as the 90 days "following an order of removal during which 'the Attorney General shall remove the [noncitizen].'" *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A). Under the statute's explicit terms, that period begins "on the latest" of three possible dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also Hechavarria*, 891 F.3d at 54-55.

In *Hechavarria*, the Second Circuit rejected the government's argument that any noncitizen subject to an "administratively final" order of removal was detained under section 1231, rather than section 1226, even if that noncitizen had subsequently been granted a stay of removal. *Id.* at 54-56. The court held that the government's position could not be squared with section 1231's "structure and logic." *Id.* at 55. More specifically, the court wrote:

> The removal period—repeatedly described as a default 90-day period throughout the section—is the period of time during which the "Attorney General shall remove" the immigrant. 8 U.S.C. § 1231. Put simply, [s]ection 1231 addresses the logistics of removal for immigrants who have been "ordered removed." *Id.* Generally speaking, [s]ection 1231 assumes that the immigrant's removal is both imminent and certain. The definition of the removal period is dependent upon the assumption that no substantive impediments remain to the immigrant's removal.

*Hechavarria*, 891 F.3d 49, 55 (2d Cir. 2018) (footnote omitted).

*Hechavarria* thus made clear that "[s]ection 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review." *Id.* at 56. The question here is whether a request for a stay, in the context of the government's forbearance policy with the Second Circuit, is the equivalent of a stay for purposes of section 1231(a)(1)(B). *See* Docket Item 15-7 at 10-16.

Under the forbearance policy, the government will not remove any noncitizen who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the noncitizen's stay motion is otherwise denied. *See D'Alessandro v. United States*, 2024 WL 3759759, at *3 (W.D.N.Y. Aug. 12, 2024) (citing *In re Immigr. Pets. for Review Pending in U.S. Ct. of Appeals for Second Cir.*, 702 F.3d 160, 162 (2d Cir. 2012)). While "[t]he [g]overnment may still seek to remove a noncitizen protected by the policy, . . . it must first 'notify both the [Second Circuit] and [the p]etitioner at least 21 days before removing [the p]etitioner,' which offers the [c]ircuit sufficient notice to adjudicate the stay motion." *Villatoro v. Joyce*, 2024 WL 68533, at *3 (S.D.N.Y. Jan. 5, 2024) (quoting *In re Immigr. Pets.*, 702 F.3d at 161-62).

This Court previously has held that a noncitizen's request for a stay and a pending petition for review in the Second Circuit, when coupled with the government's forbearance policy, constitutes a "substantive impediment" to removal under *Hechavarria*. *See, e.g.*, *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019). The Second Circuit has not yet squarely addressed this question. But it has noted that "[w]hile a petition is pending . . . , the [g]overnment's forbearance policy assures that the filing of a motion to stay removal . . . will suffice to prevent removal," at

least until the government informs the court otherwise, at which point the court can "decide the pending motion." *Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d Cir. 2014), *certified question answered*, 317 Conn. 482, 119 A.3d 522 (2015). So in light of that "substantive impediment" to removal, this Court has held that petitioners with pending motions for stays, like those whose motions have been granted, are detained under section 1226, not section 1231.

The government contests this logic. In its view, the Second Circuit's ruling in *Hechavarria* was limited to the effect of court-ordered stays on the running of the removal period under section 1231, a question resolved by the "unambiguous language" of that statute. *See* Docket Item 15-7 at 13-14. And it further argues that the court's statement that the removal period depends on the existence of "substantive impediments" to removal was mere dicta that has no basis in the statutory language. *See id.* Moreover, the government says that even if the "substantive impediment" language were controlling, the forbearance policy constitutes no such hurdle: Under that policy, the government is simply "voluntarily deciding not to remove a[ noncitizen], and, if it chooses to, the sole 'impediment' to removal is for [the government] to advise the Second Circuit of removal." *Id.* at 14.

This Court disagrees. First, it is true that in *Hechavarria*, the Second Circuit noted that it "need not decide the contours of judicial review during detention pursuant to the government's forbearance policy in this [c]ircuit." 891 F.3d at 54 n.3. So the government is correct that the decision did not directly answer the question here. Nonetheless, the government's reading of *Hechavarria* is far too narrow. The Second Circuit's decision was based both on the "clear language" of section 1231 and on the

provision's "structure and logic," which—as explained above—made the start of the removal period turn on the absence of "substantive impediments" to removal.  *See id.* at 55.

And this Court sees no grounds to depart from that reasoning here.  Even if the Second Circuit's language in *Hechavarria* is pure "dicta" as the government argues, this Court nonetheless finds that dicta "persuasive."  *See Howland v. Resteiner*, 2007 WL 4299176, at *2 (E.D.N.Y. Dec. 5, 2007) (holding that while Second Circuit dicta was "not binding," it was "nevertheless more persuasive" than conflicting decisions from district courts in another circuit).  The "removal period" under the statute begins when the noncitizen is ready to be removed, *see Hechavarria*, 891 F.3d at 55, and if the noncitizen is not ready, there is no logical reason to distinguish between those who are not ready because of a court-ordered stay and those who are not ready because of a forbearance agreement that precludes the need for a court-ordered stay.

Second, while the government recasts the forbearance policy as nothing more than its own choice and notes its ability to revoke that policy generally or in any particular case, this Court sees no reason why that changes anything.  Under "the forbearance policy, the [g]overnment cannot remove" a noncitizen with a pending stay of removal in a petition for review before the Second Circuit "unless (1) the [c]ircuit denies [the noncitizen's] stay motion or petition for review, or (2) the [g]overnment gives notice to the [c]ircuit and waits [21] days."  *Villatoro v. Joyce*, 2024 WL 68533, at *4 (S.D.N.Y. Jan. 5, 2024).  In *Villatoro*, the Southern District of New York rejected the government's claim that these requirements were "merely voluntary," noting that "these barriers are imposed by" the Second Circuit's decision in *In re Immigration Petitioners*

and thus "'temporar[ily] set[ ] aside . . . the source of the [g]overnment's authority to remove'—the hallmark of a stay."[5]  *Id.* (alterations in original) (quoting *Nken v. Holder*, 556 U.S. 418, 429 (2009)).

This Court's judgment is reinforced by the fact that, as the government concedes, *see* Docket Item 15-7 at 14-15, 15 n.4, most courts in this circuit to have addressed the issue have agreed that under the forbearance policy, requests for stays are equivalent to stays for the purposes of section 1231(a)(1)(B).  *See, e.g.*, *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 795-96 (W.D.N.Y. 2019) (Wolford, J.); *Thomas v. Whitaker*, 2019 WL

---

[5] The government also argues that "[t]he regulations and ICE's practices demonstrate that the forbearance policy is not the equivalent of a stay."  Docket Item 15-7 at 15.  Indeed, it says that 8 C.F.R. § 241.4(g)(i) defines the removal period in language that "track[s]" that of section 1231 and "[t]he regulations contain no language directing that the [Post-Order Custody Review] process" that ICE carries out under *Zadvydas* "is affected by the forbearance [policy]."  Docket Item 15-7 at 15.  So "[b]ecause ICE is the agency tasked with implementing and enforcing immigration laws," the government argues, "its determination should be given weight by this Court."  *Id.* at 15-16 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)).

In *Hechavarria*, the government similarly contended that the court "ought to afford deference to its interpretation" under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  *See Hechavarria*, 891 F.3d at 55.  But the Second Circuit rejected that argument, finding that "the government's interpretation on this point is a litigation position, not an agency interpretation."  *Id.*  The same is true here: Although the government cites regulations, those regulations do not address the specific question at issue.  That is, section 241.4(g)(i) simply "track[s]" the language of section 1231(a)(1)(B) and does not answer the question of whether the forbearance policy and a motion for a stay are the equivalent of a court-ordered stay under the statute and regulation.  *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(I)(i).  And the government admits that "[t]he regulations contain *no* language" otherwise defining the impact of the forbearance policy on the removal period.  *See* Docket Item 15-7 at 15.  In any event, *Loper Bright*, which overruled *Chevron*, made clear that an agency's interpretation of a statute "'cannot bind a court,'" although "it may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.'"  *Loper Bright*, 602 U.S. at 402, 412 (alteration in original) (quoting *Bureau of Alcohol, Tobacco and Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 98 n.8 (1983)).  Because no such "factual premises" are implicated by the issue here, the Court declines to give the government's interpretation any special deference.

1641251, at *3 (W.D.N.Y. Apr. 16, 2019) (Geraci, C.J.); *Alexandre v. Decker*, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (Daniels, J.); *Diaz v. Genalo*, 2024 WL 4124756, at *3 (S.D.N.Y. Sept. 9, 2024) (Broderick, J.); *Fajardo v. Decker*, 2022 WL 17414471, at *8-9 (S.D.N.Y. Dec. 5, 2022) (Engelmeyer, J.).  And while the government may be correct that this majority is slim, *see* Docket Item 15-7 at 14-15, that is not enough to make this Court revisit its prior holdings—especially when the government points to no new Second Circuit or Supreme Court precedent in support of its position. *See id.*

What is more, in *Hechavarria*, the Second Circuit held that the government's reading of section 1231 "would ignore [that statute's] clear language as well as its internal logic": that judicial review is a potential obstacle to—not just a "temporar[y] interrupt[ion]" of—the government's "ability to carry out [a noncitizen's] removal."  891 F.3d at 56.  Indeed, the court noted that the "responsibility to provide meaningful judicial review is one that is grounded in both the [INA] and the Constitution and may not be dismissed by the government as a mere procedural nuisance."  *Id.*  "Any interpretation to the contrary would render judicial review a meaningless symbolic exercise," the court said.  *Id.*

Those principles apply equally here.  Under the forbearance policy, the Second Circuit has ensured that it will have a chance to rule on any pending motion for a stay before the government renders the case moot by sheer fiat.  While the government's participation in this agreement with the Second Circuit may be "subject to change," Docket Item 15-7 at 13 (citation omitted), any such change might very well cause a concomitant change in Second Circuit practice.  Regardless of what the future brings,

the forbearance policy is now in effect, and in Perez Flores's case it operates—in conjunction with his motion for a stay—as a stay under section 1231(a)(1)(B). Perez Flores therefore is detained under section 1226.

## II.    DUE PROCESS

For the reasons just explained, Perez Flores is detained under section 1226. While the government "may release" noncitizens detained under section 1226(a), those detained under section 1226(c)—which applies to noncitizens, presumably like Perez Flores,[6] who have committed certain criminal offenses or engaged in certain terrorist activities—must be detained unless narrow circumstances related to witness protection are met. *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018) (citing 8 U.S.C. § 1226). In *Jennings*, a plurality of the Supreme Court held that the statute does not require— and in fact prohibits—the government from offering a noncitizen detained under section 1226(c) the opportunity to challenge the detention at a bond hearing. *See id.* at 303-04. Whether the Constitution requires that noncitizens held under section 1226(a) or (c) be afforded such an opportunity is a different question, and the Court explicitly declined to answer it. *See id.* at 312.

But the Second Circuit has answered that question, holding that noncitizens' due process rights bar their detention under section 1226(a) or 1226(c) without adequate procedural protections. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (addressing detention under section 1226(a)); *Black v. Decker*, 103 F.4th 133, 138 (2d

---

[6] The parties appear to agree that if Perez Flores is not detained under section 1231, then he is detained under section 1226(c). *See* Docket Item 1 at 8; Docket Item 15-7 at 7, 18-19; *see also infra* note 7.

Cir. 2024) (addressing detention under section 1226(c)).  And it has held that the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), "supplies the proper framework for determining when and what additional procedural protections are due such . . . detainee[s]."  *Black*, 103 F.4th at 138; *see Velasco Lopez*, 978 F.3d at 851.  Those factors are:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335); *see Velasco Lopez*, 978 F.3d at 851.

Here, the parties appear to agree that if Perez Flores is not detained under section 1231, then he is detained under section 1226(c).[7]  *See* Docket Item 1 at 8; Docket Item 15-7 at 7, 18-19.  Indeed, the government concedes that if the Court determines that Perez Flores is detained under section 1226, *Black* controls.  *See* Docket Item 15-7 at 18-19 (the government's stating that it "disagrees with the Second

---

[7] While Perez Flores was initially detained under section 1226(c), *see* Docket Item 15-1 at ¶ 15; Docket Item 15-2 at 63, it is not entirely clear to this Court that he still is detained under that section.  The basis for his section 1226(c) detention appears to have been his 2023 conviction.  *See* Docket Item 15-1 at ¶ 15.  As the BIA found, however, because the Appellate Division, Second Department, granted Perez Flores's motion to file a late appeal of that conviction, it is "not final for immigration purposes."  Docket Item 15-2 at 77.  The parties do not address whether this determination by the BIA or the events in Perez Flores's criminal case impact the statutory basis for his detention.

Ultimately, however, this Court need not reach that issue:  Without question, Perez Flores is detained under section 1226, *see supra* Section I, and regardless of whether he is currently held under section 1226(a) or section 1226(c), the Court must apply the *Mathews* factors to determine whether he is entitled to additional process.  *See Black*, 103 F.4th at 151; *Velasco Lopez*, 978 F.3d at 851.

Circuit's decision in *Black*" but acknowledging that applying *Black* "would likely lead this Court to order that [Perez Flores] receive a bond hearing").  The Court therefore turns to an examination of the *Mathews* factors.

### A.    The Private Interest Affected

As an initial matter, the Court finds that the "private interest affected" is a compelling one.  Indeed, as the Second Circuit explained in *Black*, the private interest implicated in immigration detention cases is "the most significant liberty interest there is—the interest in being free from imprisonment."  103 F.4th at 151 (quoting *Velasco Lopez*, 978 F.3d at 851).  And while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), Perez Flores has lived in this country for more than two decades, *see* Docket Item 1 at 2; Docket Item 15-2 at 17.  Further, he has sought relief from deportation, and his case remains pending before the Second Circuit.  *See* Docket Item 15-1 at ¶¶ 25-28; *Perez Flores*, Case No. 25-195, Docket Item 30.  So his interest in liberty *in the United States* must be particularly strong for him to subject himself to prolonged detention during the appeals process, which can be lengthy.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

Moreover, Perez Flores has been in ICE custody for almost a year and a half. *See* Docket Item 1 at 3; Docket Item 15-1 at ¶ 15.  In *Black*, the Second Circuit held that even a "seven-month-long detention" absent procedural protections was a "serious[] infringe[ment]" of liberty.  103 F.4th at 151.  And while Perez Flores's "detention[] in some sense [may be] the result of a criminal adjudication"—he was initially found to be removable based on a criminal conviction—he has "served his entire sentence" of

14

incarceration for that conviction. *See id.* (internal quotation marks omitted); Docket Item 1 at 12; Docket Item 15-1 at ¶ 15. So Perez Flores's current "detention[] d[oes] not arise from new or unpunished conduct." *See Black*, 103 F.4th at 151.

In sum, as in *Black*, "the first *Mathews* factor weighs heavily in favor of" Perez Flores. *See Black*, 103 F.4th at 152.

### B.    The Risk of Erroneous Deprivation and the Value of Additional Procedural Safeguards

In light of the procedures used—and more important, those not provided—thus far, there is a significant risk of an erroneous deprivation of Perez Flores's liberty. *See Velasco Lopez*, 978 F.3d at 852 (procedures afforded to noncitizen detained under section 1226(a) during his 15-month incarceration "markedly increased the risk of error"); *Black*, 103 F.4th at 152 (stating that "the 'procedures used' for section 1226(c) detainees are very few" and "include no mechanism for a detainee's release, nor for individualized review of the need for detention").

Perez Flores has had no opportunity to challenge the basis for his detention—to argue, for instance, that he poses no danger to the community or risk of flight while his appeal proceeds. *See* Docket Item 1 at 3. And while ICE apparently conducted a "file custody review" of Perez Flores's detention earlier this year, *see* Docket Item 15-1 at ¶¶ 29-30, that is no substitute for a bond hearing. Perez Flores was not given the opportunity to appear before a neutral decisionmaker, contest evidence against him, or testify on his own behalf. *See* Docket Item 15-2 at 30; Docket Item 17 at 2. So this Court finds—just as the Second Circuit did in *Black*—that an "individualized bond hearing at which an [immigration judge could] consider" whether Perez Flores's continued detention is justified would add significant value here. 103 F.4th at 153.

The second factor also weighs in Perez Flores's favor.

### C.    The Government's Interest

Finally, this Court recognizes that the government's interest in detaining Perez Flores also may be strong.  In mandating the detention of noncitizens who have committed certain crimes, section 1226(c) reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore v. Kim*, 538 U.S. 510, 518-19 (2003); *see also Jennings*, 583 U.S. at 303-04.  It is "well[ ]established" that the government has a "legitimate" and compelling interest in both those aims.  *Black*, 103 F.4th at 153.

But those interests do not outweigh Perez Flores's liberty interest.  As already explained, Perez Flores has had no opportunity to challenge the statutory assumption that there is *any* risk he will flee or endanger the community while his case proceeds.  *See* Docket Item 1 at 3.  Therefore, absent a bond hearing, it is not clear that Perez Flores's detention is required to serve the government's general interests in detaining noncitizens facing deportation.  And the government has not identified any special interests that would justify Perez Flores's continued detention here without an individualized bond hearing.  *See generally* Docket Item 15-7.

The third factor therefore weighs in Perez Flores's favor as well.

### D.    Conclusion

In sum, under the *Mathews* framework, Perez Flores's continued detention absent a bond hearing violates the Due Process Clause.  The Court nonetheless declines to grant—at least at this time—Perez Flores's request for his "release."  *See* Docket Item 1 at 15.  Instead, consistent with the Second Circuit's reasoning, this Court

16

finds that an individualized bond hearing where the government bears the burden of justifying the petitioner's continued detention is the appropriate remedy. *See Black*, 103 F.4th at 155-59; *see also* Docket Item 1 at 15 (requesting either "release" or a bond hearing). More specifically, due process entitles Perez Flores to an individualized bond hearing before an immigration judge where the government must show, by clear and convincing evidence, that his continued detention is necessary. *See Black*, 103 F.4th at 155-59. At that hearing, the immigration judge must consider whether "alternatives to detention" would address the government's interest in ensuring Perez Flores's appearance and the safety of the community. *See id.* at 155. And if the immigration judge decides that a bond might serve that interest, the judge must "consider [Perez Flores's] ability to pay" in setting any bond amount. *See id.* at 158.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Perez Flores from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether Perez Flores's continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Perez Flores's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests. In other words, the

decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Perez Flores's appearance and the safety of the community—that is, even with conditions, Perez Flores presents an identified and articulable risk of flight or a threat to the community; and it is further

ORDERED that the immigration judge must consider Perez Flores's ability to pay when setting any bond amount; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.


SO ORDERED.

Dated:   July 14, 2025
            Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

18